# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Christopher M. Redies, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and a Resident Agent in Charge ("RAC") assigned to the Springfield, Missouri, Field Office. I have been an ATF SA since July 2001, during which time I have participated in numerous narcotics and firearms investigations, and numerous searches and seizures related to narcotics and firearms. I have received specialized training on the subject of firearms and narcotics trafficking from the ATF. I have been the affiant for multiple Title III wire-tap affidavits in which illegal drugs and firearms were focuses of the investigation. Prior to becoming an ATF SA, I worked as a police officer with the Kansas City, Missouri, Police Department beginning in 1998.

2. Through my training and experience in the investigation of controlled substances and through interaction with other law enforcement officers who investigate such offenses, I know the following.

    a. that individuals involved in distributing controlled substances maintain books, records, receipts, notes, correspondence, ledgers, and other records, relating to the transportation, ordering, and/or distribution of controlled substances, even though sometimes in code; such individuals commonly front (deliver on consignment) controlled substances and maintain such records in doing so;

    b. that it is common practice for those involved in distributing controlled substances to secret contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence, or other property including storage units or safe

1

deposit boxes, for ready access and/or to conceal them from law enforcement authorities;

  c.  that persons involved in distributing controlled substances conceal in their residences or other property caches of drugs, large amounts of currency, financial instruments, and other assets of value which are the proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money related to engagement in drug trafficking activities; and that persons involved in illicit drug trafficking often purchase substantial assets including cars, boats, and homes with the proceeds of drug transactions in manners to conceal the true source of the funds;

  d.  that persons engaged in distributing controlled substances maintain on the premises, paraphernalia for packaging, cutting, weighing, and distributing controlled substances, and equipment used in the packaging, weighing, and otherwise preparing for the distribution of controlled substances;

  e.  that persons engaged in distributing controlled substances maintain on the premises addresses and telephone numbers in books or papers and in contact lists in cell phones which reflect the names, addresses, and/or telephone numbers for their sources, customers, and associates related to their drug trafficking activities, even though sometimes in code;

  f.  that persons engaged in distributing controlled substances maintain on the premises photographs and/or videos of co-conspirators, associates, assets, and controlled substances;

  g.  that persons engaged in distributing controlled substances maintain on the premises tickets, schedules, papers, notes, receipts, and other items relating to domestic and foreign travel;

  h. that persons involved in distributing controlled substances keep and maintain firearms and other explosive devices to protect themselves from other drug traffickers and from apprehension by law enforcement officers; and

  i. that persons who engage in distributing controlled substances utilize cell phones and other communication devices in order to store contact lists and to arrange for delivery and distribution of controlled substances.

3. The facts contained herein are from numerous sources to included, but not limited to, my knowledge, the observations of other law enforcement, the observations of other persons, court documents, recordings, and law enforcement documents. Because this affidavit is submitted for the limited purpose of establishing probable cause to search the location further described in Attachment A for the items listed in Attachment B, not all of the information known to me about this investigation has been included in this affidavit.

## PURPOSE OF AFFIDAVIT

4. I am seeking to search the premises at 20630 Chmelir Road, Ionia, Pettis County, Missouri, (hereinafter the "**Target Residence**"), to include any outbuildings on the property, which is more fully described in Attachment A, for the items listed in Attachment B. I am seeking evidence related to violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to distribute controlled substances; and 18 U.S.C. §§ 922(g)(1) and 924(c), that is, felon in possession of a firearm and possession of a firearm in furtherance of a drug trafficking crime.

5. The **Target Residence** is a single-story, single-family dwelling, with the front door of the residence facing east. The residence has a brown brick exterior. There is a red barn to the east of the residence. There is a garage to the southeast of the residence. The mailbox is next to Chmelir Road and has the numbers "20630" on a sign attached to the mailbox pole. The property

is the first residence on the south side of Chmelir Road, west of Meisner Road, north of Ionia, in Pettis County, Missouri. There are often several vehicles parked on the property. I am requesting authority to search the residence, premises, and vehicles within the curtilage thereof, for the items described in "Attachment A."

6. I have probable cause to believe that a search of this location will lead to evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to distribute controlled substances; and 18 U.S.C. §§ 922(g)(1) and 924(c), that is, felon in possession of a firearm and possession of a firearm in furtherance of a drug trafficking crime, as well as the identification of individuals who are or have been engaged in the commission of those crimes. The controlled substance that is the primary focus of this investigation is methamphetamine.

## PROBABLE CAUSE

7. On October 6, 2021, a confidential informant ("CI") and an ATF undercover ("UC") SA went to the **Target Residence** with the intent to purchase methamphetamine from Thomas William **PITTS**. Prior to the meeting with **PITTS**, CI was searched for money, weapons, and drugs, with negative results. CI was provided funds by ATF to purchase methamphetamine. UC also had funds to purchase methamphetamine.

8. Upon arrival at the **Target Residence**, CI and UC met with **PITTS** inside his residence. CI requested to purchase methamphetamine from **PITTS**. **PITTS** exited the **Target Residence** and went outside. After some time, **PITTS** came back inside the **Target Residence**. After **PITTS** returned inside the **Target Residence**, CI purchased approximately 28.8 grams of suspected methamphetamine from **PITTS** for $700 provided by ATF. UC was present when the purchase occurred between CI and **PITTS**. UC observed **PITTS** remove the methamphetamine from one plastic bag and place it into a separate plastic baggie. UC estimated after **PITTS** removed

the methamphetamine he sold to CI, there was at least an additional two ounces (approximately 56.7 grams) of methamphetamine remaining in the original bag where **PITTS** obtained the methamphetamine. UC and CI left the **Target Residence**. After leaving, CI provided the purchased methamphetamine to UC. CI was searched for money and additional drugs, with negative results. The suspected methamphetamine field tested positive for the presence of methamphetamine, and was found to weigh approximately 28.8 grams, including packaging.

9. On October 28, 2021, a CI and an ATF UC SA went to the **Target Residence** with the intent to purchase methamphetamine from **PITTS**. Prior to the meeting with **PITTS**, CI was searched for money, weapons, and drugs, with negative results. CI was provided funds by ATF to purchase methamphetamine. UC also had funds to purchase methamphetamine.

10. Upon arrival at the **Target Residence**, CI and UC met with **PITTS** inside the **Target Residence**. CI requested to purchase methamphetamine from **PITTS**. CI and UC purchased approximately 57.6 grams of suspected methamphetamine from **PITTS** for $900 in funds provided by ATF. UC was present when the purchase occurred between with **PITTS**. UC observed **PITTS** remove the methamphetamine from a container with additional methamphetamine located inside it. UC estimated the additional methamphetamine inside the container to be approximately the size of a softball. UC and CI left the **Target Residence**. After leaving, CI provided the purchased methamphetamine to UC. CI was searched for money and additional drugs, with negative results. The suspected methamphetamine field tested positive for the presence of methamphetamine, and was found to weigh approximately 57.6 grams, including packaging.

11. A debrief of CI was conducted after leaving the **Target Residence**. CI said (s)he observed **PITTS** remove the methamphetamine from a safe. CI said (s)he observed two firearms inside the safe with the methamphetamine. CI described both firearms as being handguns. CI said

one handgun was gray and the other handgun was black. CI further stated (s)he observed a black handgun in the back of **PITTS's** waistband when he sold the methamphetamine to CI and UC.

12. The meeting on October 6, 2021, was audio recorded; video recording was attempted but unsuccessful due to equipment failure. The meeting on October 28, 2021, was audio and video recorded. The recordings were reviewed by UC and found to be consistent with the information provided herein.

13. **PITTS** has multiple prior felony convictions, including distribution of a controlled substance in Pettis County, Missouri, in August 2014; unlawful use of a weapon in Pettis County, Missouri, in February 2012; and possession of a controlled substance in Pettis County, Missouri, in February 2012. Accordingly, **PITTS** is ineligible to possess firearms in the United States.

14. Based upon my training, experience, and participation in other investigations involving controlled substances and possession of firearms and by a prohibited person, I know that persons who sell illegal drugs commonly have in their possession (on their person), at their residence, in their vehicles, in their residences and/or their businesses, stored at other locations, firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, and other weapons. Said firearms are used to protect and secure property and/or proceeds and/or drugs.

## CONCLUSION

15. Based on the foregoing, I believe that **PITTS** is currently utilizing the **Target Residence** to further drug trafficking activity, in violation of 21 U.S.C. §§ 846 and 841(a)(1), while in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c). Based on the above, I have probable cause to believe and do believe there is probable cause to request that the Court issue a search warrant directing the search of the location further described in Attachment A for the

items described in Attachment B, which are contraband or evidence, or are otherwise used to facilitate or promote, or which constitute proceeds of the crimes listed above.

16. I further request that the Court order that all papers in support of this application, including the affidavit, search warrant, search warrant return, and Order granting sealing be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation. Additionally, it is requested that these documents be disclosed as necessary for any discovery in criminal prosecutions without unsealing.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

CHRISTOPHER REDIES
Digitally signed by CHRISTOPHER REDIES
Date: 2021.11.12 12:31:13 -06'00'

Christopher M. Redies
Special Agent / Resident Agent in Charge
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me via telephone or other reliable electronic means on this __12th__ day of November 2021.

HONORABLE WILLIE J EPPS, JR.
United States Magistrate Judge
Western District of Missouri